UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
RICHARD EINSTEIN DAVIS, JD,          :
          Plaintiff,          :
                              :    **OPINION AND ORDER**
v.                                   :
                              :    22 CV 9501 (VB)
MERCK & CO.,                         :
          Defendant.          :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Richard Einstein Davis, JD, brings this employment discrimination action against defendant Merck Sharp & Dohme LLC[1] ("Merck") pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"),[2] and the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), alleging Merck discriminated against him on the basis of race.

    Now pending is defendant's motion for summary judgment. (Doc. #49). For the reasons set forth below, the motion is DENIED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]    In its answer, defendant asserts that Merck Sharp & Dohme LLC, a wholly owned subsidiary of Merck & Co., Inc., employed plaintiff, and that it was improperly sued herein as Merck & Co., as reflected in the caption. (Doc. #14 at 1 n.1).

[2]    In his complaint, plaintiff invokes "42 U.S.C. 1981-a." (Doc. #1 ¶¶ 3, 68). Consistent with the parties' briefing of this case as a § 1981 claim, the Court understands plaintiff to bring his claim under 42 U.S.C. § 1981(a), not 42 U.S.C. § 1981a—a separate statute that does not create a standalone cause of action.

1

**BACKGROUND**

The parties have submitted briefs, statements of material fact pursuant to Local Civil Rule 56.1, and declarations with exhibits. These submissions reflect the following factual background.

I.  Plaintiff's Employment

On January 13, 2020, plaintiff, a Black man, joined Merck as a Director of Compliance and Risk Management. Plaintiff's position fell under the umbrella of the Cyber Fusion Center, a subset of the company's IT Risk Management & Security ("ITRMS") division. In this role, plaintiff supervised, directly or indirectly, 25 other employees, but he was not authorized to hire or fire subordinates or consultants without the approval of his manager. Saverio Ortizzo, an Executive Director within ITRMS, supervised plaintiff. Ortizzo is white.

In September 2021, Merck retained Jim Barrick, a white man, as a contractor to work on a specific information security project created by plaintiff. An Associate Director in ITRMS, Daniel Trotter, also a white man, managed Barrick's contract and coordinated with plaintiff regarding Barrick's project. Plaintiff was involved in overseeing Barrick's work and regularly met with him one-on-one to discuss the project's status, though he denies managing Barrick's day-to-day performance. Barrick worked remotely, and his contract with Merck was subject to renewal every three months. In December 2021, at the conclusion of the first three-month cycle, Merck renewed Barrick's contract.

II. Termination of Barrick's Contract

On January 26, 2022, Barrick emailed Ortizzo to complain that plaintiff had subjected him to "intemperate" and "offensive" behavior during three meetings. (Doc. #51-7 at ECF 4–

5).[3]  He wrote that plaintiff had berated him in "screaming fits" during two different meetings—one in September 2021, the other in October 2021.  He also claimed plaintiff made "an overtly racist statement" at a one-on-one meeting held the previous day, January 25, 2022; according to Barrick, plaintiff concluded the "otherwise collegial" meeting by saying he "preferred chocolate cake to vanilla cake" as an explanation for his management style.  (Id. at ECF 5).  Barrick interpreted this to mean that plaintiff favored African American employees over white employees.

Later on January 26, Ortizzo responded to Barrick, providing the link to submit a formal complaint and offering to speak to Barrick himself.  Barrick called Ortizzo a few minutes later.  During that call, the two agreed Ortizzo would speak to plaintiff regarding Barrick's complaints.  Ortizzo spoke with plaintiff soon thereafter and explained, without going into detail, that Barrick had expressed concerns regarding plaintiff.  Ortizzo urged plaintiff to reach out to Barrick.  In the early evening, plaintiff messaged Barrick on Microsoft Teams and asked to speak, but Barrick did not respond.

That same day, Trotter separately learned of Barrick's concerns from another employee and reached out to plaintiff.  He informed plaintiff that Barrick complained about plaintiff's "chocolate" comment and intended to raise that complaint to Ortizzo.  (Doc. #56-1, Tr. at 102).[4]  Plaintiff testified he felt Barrick's decision to speak directly to Ortizzo—and not plaintiff himself—was a "betrayal of trust."  (Id. at 116).

Plaintiff did not wait to speak to Barrick before taking action.  In the evening of January 26, plaintiff spoke to Trotter about potentially terminating Barrick's contract and explained, if

---

[3]   "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[4]   Citations to "Tr. at __" refer to the page numbers at the top right of each transcript page.

3

that were to occur, Trotter would need to find a replacement.  That same evening, previously scheduled meetings between Barrick and plaintiff were canceled on Barrick's calendar, although it is unclear who cancelled them.  The next morning, on January 27, plaintiff instructed Trotter to remove Barrick from the project.  Trotter did so and requested that Barrick's access to his Merck account be shut down.

Plaintiff testified he took immediate action because Barrick's performance had been subpar for weeks, if not months, and Barrick repeatedly "disregard[ed]" his directions, including "lectur[ing]" plaintiff on the flaws of plaintiff's proposed plans.  (Doc. #56-1, Tr. at 87–88).  Plaintiff also claims Barrick misrepresented his skillset and was not capable of executing his assigned tasks.  After hearing of Barrick's purportedly false complaints to Ortizzo, plaintiff "consider[ed] the cumulative impact" of Barrick's behavior and decided that a change in contractors was necessary.  (Doc. #61, ¶ 15).  This was the first time that plaintiff raised any concerns about Barrick's performance.

On January 27, plaintiff messaged Ortizzo, "I had to terminate [] Barrick this morning based on info I received last night. . . . He was apparently a disgruntled contractor."  (Doc. #51-8 at 7).  Later that day, Ortizzo ran into plaintiff in the office hallway and said he "wish[ed]" plaintiff had not moved to already terminate Barrick's contract because they "could have had a conversation prior to doing that."  (Doc. #60-2, Tr. at 37).  However, Ortizzo did not order plaintiff to rescind the termination of Barrick's contract or otherwise intervene.

Soon thereafter, Barrick emailed Trotter and asked to speak that day "regarding a confidential matter" involving plaintiff.  (Doc. #51-10 at 1).  A few minutes later, Barrick emailed Ortizzo and explained he had "just finished" speaking with Trotter, who informed him plaintiff "asked" Trotter to cancel Barrick's contract with Merck "immediately."  (Doc. #51-11 at

4

1).  Barrick went on to write that he had asked Trotter to "connect" with Ortizzo and plaintiff, and that an internal Merck "investigation request" regarding "retaliation . . . was filed earlier" that morning.  (Id.).

III.    Investigation and Termination of Plaintiff's Employment

For almost nine months, Merck's Office of Ethics ("OOE") investigated the termination of Barrick's contract.  Brittney Brooks, an Associate Director of Compliance, led the investigation and interviewed plaintiff, Barrick, Ortizzo, and Trotter, among others.

At the conclusion of her investigation, Brooks made several factual findings relevant here.  She determined plaintiff made the "chocolate and vanilla" comment, despite acknowledging plaintiff asserted it was Barrick who made the comment and that Ortizzo confirmed plaintiff told him Barrick made the comment.  (Doc. #51-16 at 8–9, 15).  She also found plaintiff asked Trotter to terminate Barrick's contract "in part" because Barrick "intended to go to" Ortizzo with his concerns rather than speaking to plaintiff directly.  (Id. at 12).  Finally, she noted both Trotter and Ortizzo stated they "were not aware of any reported [] issues" with Barrick's performance.  (Id.).  She did not investigate either Ortizzo or Trotter for potential misconduct.

Based on those findings, Brooks determined plaintiff violated Merck's policies mandating cooperation with internal investigations and prohibiting retaliation.  Those policies applied to all Merck employees.  Accordingly, she recommended his employment be terminated.

Ortizzo and his supervisor, Terence Rice, were "surprised" by OEO's recommendation and elevated the decision to Rice's supervisor and the company's general counsel.  (Doc. #56-2, Tr. at 55–57). According to Ortizzo, those senior executives agreed plaintiff retaliated against Barrick and, in September 2022, Merck terminated plaintiff's employment.

5

**DISCUSSION**

I.    <u>Standard of Review</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).[5]

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. <u>Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.</u>, 391 F.3d 77, 83 (2d Cir. 2004). Bald assertions, completely unsupported by

---

[5]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

admissible evidence, are not sufficient to overcome summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Race Discrimination Claims

Defendant argues plaintiff fails to establish a prima facie case of race discrimination under Section 1981 or the NYSHRL, and that even if he could establish a prima facie case, defendant has proffered legitimate non-discriminatory reasons for plaintiff's termination, and plaintiff has not identified any evidence from which a reasonable jury could conclude those reasons were pretextual.

The Court disagrees.

A.      Legal Standard

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson v. County of Oneida, 375 F.3d 206, 224 (2d Cir. 2004); 42 U.S.C. 1981(a). Similarly, the NYSHRL prohibits discrimination against an employee based on that employee's "age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence." N.Y. Exec. Law § 296(1).

When, as here, a plaintiff's Section 1981 and NYSHRL discrimination claims are based on circumstantial evidence of discriminatory intent, the claims are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, a plaintiff establishes a prima facie case of discrimination by demonstrating, by a preponderance of the evidence, "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv)

7

circumstances surrounding that action giving rise to an inference of discrimination." Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002). "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998).

Once a plaintiff presents a prima facie case, the defendant then bears the burden of articulating a legitimate, non-discriminatory reason for the adverse employment action. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude the employer's explanation is merely a pretext for actual discrimination. Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981).

B.   Analysis

1.   Prima Facie Case

As a threshold matter, it is undisputed that (i) plaintiff is a member of a protected class; (ii) was qualified for his position; and (iii) his termination constitutes an adverse employment action. However, defendant contends there is no evidence to support an inference of discrimination.

"One way to create an inference of discrimination is to show that similarly situated employees, outside plaintiff's protected class, were treated preferentially." Campbell v. All. Nat'l Inc., 107 F. Supp. 2d 234, 244 (S.D.N.Y. 2020). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." Ruiz v. County of Rockland, 609 F.3d 486, 493–94 (2d Cir. 2010). "The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both

8

cases are identical." Id. "Although an employee's position is relevant to the analysis, employees need not be of the exact same rank to be considered similarly situated." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 109 n.7 (2d Cir. 2010). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." King v. Aramark Services, Inc., 96 F.4th 546, 563 (2d Cir. 2024).

The Court finds there is a triable issue of material fact as to whether Trotter and Ortizzo, who are both white, were similarly situated to plaintiff, thus supporting an inference of discrimination. Whether employees are similarly situated depends on (i) whether the employees "were subject to the same workplace standards" and (ii) "whether the conduct for which the employer imposed discipline was of comparable seriousness." Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000). Here, it is undisputed that Trotter and Ortizzo were subject to the same workplace standards, including Merck's anti-retaliation policy. In addition, both Trotter and Ortizzo were aware that plaintiff's termination request was connected to Barrick's complaints against him.

Moreover, a reasonable jury could conclude Trotter and Ortizzo were not merely bystanders, but engaged in conduct similar to plaintiff. First, Trotter managed Barrick's contract and executed the termination upon plaintiff's request. Second, Ortizzo was plaintiff's supervisor and was informed of plaintiff's decision to terminate Barrick's contract within hours, but did not intervene or even question that decision. A reasonable jury could conclude both Trotter and Ortizzo had the power to stay, if not reverse, the termination of Barrick's contract if they felt the decision was the result of wrongful retaliation. Moreover, the fact that plaintiff, Ortizzo, and Trotter all occupied different positions within Merck does not preclude a finding that they were similarly situated. See Gorzynski v. JetBlue Airways Corp., 596 F.3d at 109 n.7.

9

Defendant's reliance on Ruiz v. County of Rockland is misplaced. There, the Second Circuit determined the plaintiff's two proposed comparators were not similarly situated because, in relevant part, neither engaged in the inappropriate behavior in which the plaintiff engaged. 609 F.3d at 495. Here, by contrast, a reasonable jury could conclude Trotter and Ortizzo also retaliated against Barrick by acceding to plaintiff's request to terminate Barrick's contract—and thus were similarly situated to plaintiff. Although a reasonable jury could, of course, credit defendant's argument that plaintiff engaged in different conduct than Ortizzo and Trotter because plaintiff alone requested the termination of Barrick's contract in response to a complaint targeting plaintiff, these contrasting reasonable inferences create an issue of fact. Accordingly, whether Trotter and Ortizzo are similarly situated to plaintiff is a jury question. See King v. Aramark Services, Inc., 96 F.4th at 563.

Therefore, viewing the record as a whole and in the light most favorable to the non-moving party, plaintiff has met his "minimal" burden of establishing a prima facie case of discrimination. See Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999).

2. Non-Discriminatory Reasons for Plaintiff's Termination

Defendant argues plaintiff's disciplinary record constitutes a legitimate, non-discriminatory reason for the adverse employment actions. It is well settled that "violations of employer policy are legitimate, nondiscriminatory reasons for adverse actions." Smith v. N.Y. Presbyterian Hosp., 440 F. Supp. 3d 303, 335 (S.D.N.Y. 2020) (citing Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 65 (2d Cir. 1997)). Following OOE's investigation, plaintiff was found to have violated Merck's policies requiring cooperation with internal investigations and prohibiting retaliation. As such, defendant has met its burden to proffer legitimate, non-discriminatory reasons for plaintiff's termination.

10

3. <u>Pretext</u>

Plaintiff argues the same evidence from which a reasonable jury could find that Trotter and Ortizzo were similarly situated to plaintiff, thus supporting an inference of discrimination, also supports a finding of pretext.

At the third step of the <u>McDonnell Douglas</u> analysis, a plaintiff must present "sufficient admissible evidence from which a rational finder of fact could infer that more likely than not she was the victim of intentional discrimination." <u>Bickerstaff v. Vassar Coll.</u>, 196 F.3d 435, 447 (2d Cir. 1999). A plaintiff "is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 203 (2d Cir. 1995). Plaintiff must "produce admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." <u>Bart v. Golub Corp.</u>, 96 F.4th 566, 576 (2d Cir. 2024).

"A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for . . . discrimination." <u>Graham v. Long Island R.R.</u>, 230 F.3d at 39. Indeed, "the fact that" other similarly situated co-workers "were not disciplined" for policy violations—when the plaintiff was fired after allegedly violating company policies—serves as "both prima facie evidence of discrimination" and evidence of "pretext[]." <u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d at 108.

As discussed above, a rational jury could find Ortizzo and Trotter were similarly situated to plaintiff, as they both were subject to the same policies as plaintiff and both were involved, albeit to differing degrees, with the decision to terminate Barrick's contract. Because the Court "has already found a material dispute of fact as to whether" Ortizzo and Trotter were similarly situated, plaintiff "has carried [his] burden in defeating [defendant's] motion for summary judgment." Harrison v. Port Authority of N.Y. and N.J., 2020 WL 1233637, at *7 (S.D.N.Y. Mar. 13, 2020). Indeed, although the evidence of discrimination may be thin, the Court finds the investigation into plaintiff and the termination of his employment, in contrast to Ortizzo and Trotter, "would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Bart v. Golub Corp., 96 F.4th at 576 (emphasis added).

Accordingly, granting summary judgment to defendant on plaintiff's discrimination claims is inappropriate.

III.    Defendant's Affirmative Defenses

Defendant argues summary judgment should be granted on two of its affirmative defenses: (i) that plaintiff is not entitled to attorney's fees, and (ii) that punitive damages are unavailable because defendant acted in good faith.

The Court disagrees, as neither issue is ripe for resolution on summary judgment.

First, "[i]n any action or proceeding to enforce a provision of [Section 1981], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); see also Diamond v. O'Connor, 417 F. App'x 104, 105 (2d Cir. 2011) (summary order). If plaintiff prevails in this case, the Court may, in its discretion, award a

reasonable attorney's fee. As such, deciding this question now would be premature and summary judgment is inappropriate.[6]

Second, "punitive damages may be awarded for claims of employment discrimination only where the employer 'engaged in a discriminatory practice or discriminatory practices <u>with malice or reckless indifference</u> to the federally protected rights of an aggrieved individual.'" <u>Wiercinski v. Mangia 57, Inc.</u>, 787 F.3d 106, 115 (2d Cir. 2015) (quoting 42 U.S.C. § 1981(b)(1)). As with attorney's fees, it is premature to decide whether plaintiff is entitled to punitive damages. Rather, "whether or not the issue of punitive damages should be presented to the jury will depend on all of the evidence presented at trial." <u>Herbowy-Hubalek v. Lithia of Yorkville – 3, LLC</u>, 2024 WL 1329035, at *27 (N.D.N.Y. Mar. 28, 2024).

Accordingly, summary judgment as to defendant's affirmative defenses regarding attorney's fees and punitive damages is inappropriate.

## CONCLUSION

The motion for summary judgment is DENIED.

The Court will conduct a case management conference on February 19, 2025, at 12:00 p.m. to be held at the White Plains courthouse, Courtroom 620, at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case.

---

[6]   Defendant argues plaintiff is not entitled to attorney's fees because Merck did not publish any false statements in connection with this matter. But it identifies, and the Court is aware of, no relevant authority or legal standard involving false statements that is relevant to the decision to award attorney's fees under section 1988.

The Clerk is instructed to terminate the motion.  (Doc. #49).

Dated: January 29, 2025
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge